UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICKIE KELLY,

        Plaintiff,

v.                             Case No. 8:19-cv-2791-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for DIB and SSI (Tr. 185-94). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 83-122, 125-36). Plaintiff then requested an administrative hearing (Tr. 137-38). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 32-75). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied

Plaintiff's claims for benefits (Tr. 12-30).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 183-84). Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1966, claimed disability beginning July 31, 2013, which she amended during the administrative hearing to January 15, 2016 (Tr. 36, 185, 189).  Plaintiff obtained a twelfth-grade education (Tr. 207).  Plaintiff's past relevant work experience included work as an auto deliverer and a delivery driver supervisor (Tr. 39-40, 61-62, 207).  Plaintiff alleged disability due to back problems, depression, fatigue, anemia, colon problems, and gastrointestinal problems (Tr. 206).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2018 and had not engaged in substantial gainful activity since January 15, 2016, the amended alleged onset date (Tr. 17).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the ankle and shoulder, obesity, and major depressive disorder (Tr. 17).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18).  The ALJ then

concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff was precluded from climbing ladders, ropes, or scaffolds; could perform no more than occasional crouching, crawling, kneeling, stooping, and climbing ramps and stairs; remained able to understand, remember, and carry out just simple instructions and maintain persistence for only simple tasks in an environment with few day-to-day changes in terms of work processes or work duties/settings; and could not perform any work with the public or be required to interact with coworkers on more than an occasional basis (Tr. 19-20).    In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 23).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a mailroom clerk, laundry sorter, and merchandise marker (Tr. 24, 63-64).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 24).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The SSA, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the claimant cannot perform the tasks required of

his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the

findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by (1) failing to properly consider Plaintiff's combination of impairments, (2) failing to consider Plaintiff's mental impairment when formulating the RFC assessment, (3) failing to properly consider the opinions of Dr. Brie Pulas and Dr. Lawrence Pasman, and (4) failing to properly support the RFC assessment and hypotheticals to the VE.  For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

### A.    Consideration of Impairments

Initially, Plaintiff contends that the ALJ erred in considering Plaintiff's combination of impairments by failing to include Plaintiff's symptoms from gastroesophageal reflux disorder (GERD); gastroparesis, status-post two hiatal hernia repairs; post-traumatic stress disorder (PTSD); and anxiety.  Step two operates as a threshold inquiry.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (*per curiam*).  At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii), 416.921.   A

claimant need show only that his or her impairment is not so slight and its effect is not so minimal that it would clearly not be expected to interfere with his or her ability to work.  *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*).  "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities.  *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citations omitted).

Notably, however, the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied); *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally noting that nothing requires the ALJ to

identify, at step two, all of the impairments that could be considered severe).  Here, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the ankle and shoulder, obesity, and major depressive disorder (Tr. 17).  Accordingly, since the ALJ determined that Plaintiff suffered from multiple severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless.  *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25.

As Plaintiff asserts, however, although an ALJ need not determine whether every alleged impairment is "severe" at step two, the ALJ must consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation.  *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014).  The analysis then turns to whether the ALJ properly considered Plaintiff's impairments, both severe and non-severe, at the other steps of the sequential analysis.  As explained below, the ALJ failed to properly consider Plaintiff's impairments in combination later in the sequential evaluation process.

### i.    Gastrointestinal Impairments

Plaintiff contends that the ALJ failed to consider her symptoms from GERD and gastroparesis, status-post two hiatal hernia repairs, or to consider her multiple accidents each week due to an inability to make it to a restroom.  Although the ALJ briefly referenced Plaintiff's gastrointestinal impairments and some symptoms

related thereto, the decision does not reflect that the ALJ properly considered all of her gastrointestinal impairments and symptoms in combination (Tr. 20-23). Throughout the record, Plaintiff consistently and repeatedly complained of issues and symptoms relating to GERD, gastroparesis, nausea, alternating diarrhea and constipation, irritable bowel syndrome, abdominal pain, and gassiness (Tr. 412-16, 443-48, 453-60, 504-05, 571-87, 607-15, 630-43, 670-85, 720). During the hearing, she also indicated that she experienced unexpected accidents several times per week where she would have major urges to use the restroom and not make it to the restroom (Tr. 48). The ALJ discounted such statement by indicating that Plaintiff had seen a gastroenterologist who made no mention of such reports (Tr. 22), yet treatment notes indicated, for example, that Plaintiff described a continuation of stool urgency (Tr. 579) and reported that she experienced diarrhea three times per day following meals (Tr. 583). While not the same as accidents, Plaintiff's gastrointestinal issues appear to present limitations as to Plaintiff's ability to perform sustained work activity. The brief discussion by the ALJ of Plaintiff's gastrointestinal impairments and symptoms does not indicate that the ALJ fully considered such issues or their effect on Plaintiff's ability to perform work activities. Rather, it appears that the ALJ broadly rejected such impairments and limitations. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted) (indicating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" as long as the decision is not a broad rejection, meaning not enough to enable the court to conclude that the ALJ considered a

claimant's medical condition as a whole).   Significantly, to the extent that a hypothetical individual with Plaintiff's background would be required to be away from her work station due to an accident and cleaning herself up approximately three times per week, the VE testified that such a hypothetical individual would be precluded from performing all work (Tr. 66).   Accordingly, remand is warranted for the ALJ to more fully address Plaintiff's gastrointestinal impairments and symptoms and their combined effect on Plaintiff's ability to perform work activities.

### ii.   Mental Impairments

Plaintiff also asserts the ALJ erred by failing to explain how or whether he considered Plaintiff's diagnosis of anxiety, auditory hallucinations, and PTSD. Agency regulations require a "special technique" be used by the ALJ when evaluating mental impairments.  *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. §§ 404.1520a, 416.920a. Essentially, this technique requires an assessment regarding how the claimant's mental impairments impact four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).   In rating the degree of limitation, the Commissioner employs a five-point scale in the functional areas: none, mild, moderate, marked, and extreme.  20 C.F.R. §§ 404.1520a(c)(4);  416.920a(c)(4).   When considering a claimant's mental impairments, the ALJ must incorporate into the written decision the pertinent findings and conclusions based on the technique and must make a specific finding

as to the degree of limitation for each of the functional areas.  *Moore*, 405 F.3d at 1213-14; 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

The ALJ applied the special technique in considering Plaintiff's mental limitations at step three of the sequential analysis.  Specifically, the ALJ concluded that Plaintiff maintained moderate limitations in her ability to understand, remember, or apply information; moderate limitations in her ability to interact with others; moderate limitations in her ability to concentrate, persist, and maintain pace; and moderate limitations for adapting or managing herself (Tr. 18-19).   In reaching that conclusion, the ALJ relied upon Plaintiff's treatment notes and the opinions of two state agency medical consultants (Tr. 18-19, 88-91, 93-95, 101-04, 106-08, 294-97, 302-04, 314-17, 321-23).   The ALJ then proceeded to step four of the sequential evaluation process.

At step four, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945.  To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each.   20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e),

416.945(a)(2) & (e); *see Jamison*, 814 F.2d at 588 (stating that the "ALJ must consider the applicant's medical condition taken as a whole").   In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions.   20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3); SSR 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

With respect to Plaintiff's mental impairments, the decision does not reflect that the ALJ properly considered Plaintiff's anxiety, depression, PTSD, or auditory hallucinations (Tr. 15-25).   While disability is determined based upon the effect an impairment has on a claimant's ability to work, rather than the diagnosis of an impairment itself, the record reflects that, on several occasions, Plaintiff presented with an anxious or depressed mood and affect – even being characterized as weepy – and repeatedly presented with complaints of auditory hallucinations (Tr. 482, 645-54, 656-59, 665-68, 703, 706, 709, 712, 718, 720, 723-24, 726, 728).   *See Davis v.*

*Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*).  Her mental health treatment notes indicate that the anxiety and depression were linked with the PTSD, and weekly therapy was suggested to address the PTSD (Tr. 653-54, 728-29).  The ALJ's decision simply glosses over the mental health treatment records, indicating primarily that Plaintiff presented with "largely normal" mental status findings (Tr. 19-23).  Without more, it is unclear whether the ALJ considered Plaintiff's condition as a whole.  Upon remand, therefore, the ALJ should address whether Plaintiff's anxiety, PTSD, or auditory hallucinations limit her ability to perform work activities and, if so, the extent of such limitations.

### iii.   Musculoskeletal Impairments

Plaintiff additionally contends that the ALJ failed to properly consider her musculoskeletal impairments and limitations in finding that Plaintiff maintained the ability to perform a reduced range of light work.  Specifically, Plaintiff argues that the record does not support a finding that Plaintiff, who was 53 years old on the date of her hearing, could perform the standing and walking requirements of light work given her left ankle pain and chronic hip and low back pain.  In this instance, the record reflects that Plaintiff continuously complained of chronic ankle pain and swelling, exacerbated by weightbearing activity, and was observed as ambulating slowly with the use of a crutch or air cast after a fall in May 2016, with a subsequent MRI confirming an osteochondral lesion with the medial talar bone and probably chronic degenerative subchondral signal alteration in the anterior aspect of the subchondral bone of the distal tibia (Tr. 421, 433-41, 470-71, 474-76, 504, 533-48,

691-92).  A few months after the fall, in September 2016, she reported that she had

not been walking much due to pain in her ankle (Tr. 593).  Following that, in June

2017, Plaintiff reported that she continued to experience pain and swelling in the

ankle and calf for which she kept her leg elevated (Tr. 571).  Subsequent X-rays

demonstrated progression of medial and lateral soft tissue swelling since a prior

study and degeneration of the tibiotalar joint along with small plantar and Achilles

spurs (Tr. 693).

Despite consistent and repeated complaints of ankle pain and swelling and

objective findings supporting an ankle impairment, the ALJ discounted Plaintiff's

complaints and found them not entirely credible because she was lifting heavy

furniture at the time she injured her ankle in May 2016, which the ALJ found

inconsistent with her allegations (Tr. 22).  Based on that finding, the ALJ concluded

that Plaintiff could perform a reduced range of light work.  Notably, the regulations

define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.  Even
> though the weight lifted may be very little, a job is in this category
> when it requires a good deal of walking or standing, or when it
> involves sitting most of the time with some pushing and pulling or arm
> or leg controls.  To be considered capable of performing a full or wide
> range of light work, [a claimant] must have the ability to do
> substantially all of these activities. …

20 C.F.R. §§ 404.1567(b), 416.967(b).

As Plaintiff contends, the ALJ appears to have improperly considered her

ankle impairment and the resulting limitations in setting forth the RFC.  The fact

that Plaintiff lifted furniture on one occasion, and then severely injured herself as a

14

result, does not necessarily weigh against a finding that Plaintiff's ankle impairment limited her ability to perform work activities against the backdrop of repeated complaints and objective evidence. Further, proper consideration of the limitations from the ankle impairment is especially important in this instance because, during the administrative hearing, the VE testified that the need to elevate a leg or to have a sit/stand option would either reduce or preclude the types and number of jobs available at the light-work level (Tr. 68-70). On remand, the ALJ should therefore address the ankle impairment and any limitations stemming therefrom.

### B.   Medical Opinions

Plaintiff next argues that the ALJ failed to properly consider the medical opinion of Dr. Pulas and Dr. Pasman. Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairments, and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).[1] When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179 (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when

---

[1] These regulations apply to claims filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927. Claims filed on or after March 27, 2017 are governed by new regulations applying a somewhat modified standard for the handling of opinions from treating physicians. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). Since Plaintiff filed her claims on February 19, 2016 (Tr. 185-94), 20 C.F.R. §§ 404.1527 and 416.927(c) apply.

evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, however, so long as the ALJ articulates a

specific justification for the decision.  *See Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citation omitted).

### i.   Dr. Pulas

Plaintiff argues that the ALJ erred when he afforded the opinion of Dr. Pulas little weight.  In July 2018, Dr. Pulas submitted a Medical Source Statement as to Plaintiff's functionality with regard to her mental impairments (Tr. 687-89).  The Medical Source Statement defined a "good" level of functioning as a limited but satisfactory ability to function and defined a "fair" level of functioning as a seriously and markedly limited ability to function (Tr. 688).[2]  Therein, Dr. Pulas described Plaintiff's ability to deal with work stresses, deal with the public, and maintain concentration and attention as fair (Tr. 687-88).  Dr. Pulas opined that Plaintiff's ability to follow work rules, interact with supervisors, relate to coworkers, function independently, and use judgment with the public all remained good (Tr. 687-88).  With respect to Plaintiff's ability to understand, remember, and carry out complex job instructions, Dr. Pulas indicated that Plaintiff's ability remained fair, while Plaintiffs ability to understand, remember, and carry out simple job instructions and detailed but not complex job instructions remained good (Tr. 689).  Dr. Pulas stated that Plaintiff maintained a fair ability to behave in an emotionally stable manner and demonstrate reliability but also demonstrated a good ability to maintain her

---

[2] As the Commissioner asserts, some courts have concluded that check-off forms, similar to the Medical Source Statement submitted by Dr. Pulas, present "limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."  *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (footnote omitted).

personal appearance and relate predictably (Tr. 689).  Lastly, Dr. Pulas determined that, due to Plaintiff's impairments and treatment, Plaintiff would be absent from work more than two times per month (Tr. 689).

In determining Plaintiff's RFC, the ALJ considered the opinion of Dr. Pulas and afforded the opinion little weight (Tr. 22-23).  The ALJ indicated that Dr. Pulas's opinion that Plaintiff maintained a "fair" or "good" ability in all work-related areas listed on the form was not consistent with Dr. Pulas's treatment notes. *See Phillips*, 357 F.3d at 1240-41; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ found that Dr. Pulas's treatment notes indicated occasional abnormalities involving Plaintiff's affect, while the majority of her treatment notes demonstrated normal mental status findings and intact memory, attention, and concentration with appropriate insight and judgment (Tr. 23, 482-89, 696-729).  Plaintiff asserts that the ALJ failed to discuss all of the findings in Dr. Pulas's treatment notes, or the treatment notes from Licensed Mental Health Counselor Zoila Rey ("LMHC Rey"), in affording Dr. Pulas's opinion little weight (Tr. 21-22).

As the Commissioner posits, the ALJ does not need to address every finding set forth by a medical source.  *See Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014) (citation omitted) (finding that the ALJ did not err by failing to specifically address a medical source's opinion regarding various limitations, as the ALJ's decision made clear that the ALJ considered both the medical source's opinion and the plaintiff's medical condition as a whole); *Dyer*, 395 F.3d at 1211 (citation omitted) (indicating that "there is no rigid requirement

that the ALJ specifically refer to every piece of evidence in his decision" as long as the decision is not a broad rejection, meaning not enough to enable the court to conclude that the ALJ considered a claimant's medical condition as a whole). While the ALJ did not address every finding in every treatment note, nothing required him to do so, as the decision was not a broad rejection. *Dyer*, 395 F.3d at 1211 (citation omitted). Here, however, the ALJ decision reflects that the ALJ did not properly consider the mental health treatment notes and diagnoses. Given the findings set forth above, the ALJ should more thoroughly address the treatment notes and findings of Dr. Pulas, along with the rest of the mental health treatment notes, in setting forth the RFC assessment.

### ii.   Dr. Lawrence Pasman

Plaintiff also contends that the ALJ erred by failing to consider Dr. Pasman's statement that Plaintiff's prognosis was "guarded" (Tr. 472). Though the ALJ did not specifically reference Dr. Pasman's statement regarding Plaintiff's prognosis appearing guarded, the decision demonstrates that the ALJ considered Dr. Pasman's report and findings in determining Plaintiff's RFC (Tr. 21-23, 468-72). The ALJ correctly found that Dr. Pasman examined Plaintiff and noted abnormalities, including impaired memory, impaired concentration, and other deficits (Tr. 21, 468-72). As the ALJ indicated, however, Dr. Pasman found inconsistencies between the information Plaintiff provided and Dr. Pasman's behavioral observations, such that the information obtained during his interview of Plaintiff was of questionable reliability (Tr. 21, 468). Indeed, Dr. Pasman further

stated that his professional opinions "should be viewed as tentative comments which are offered for further review and revision, pending more accurate sources of information regarding the claimant's true problems, complaints, and history" (Tr. 468).  Beyond the fact that Dr. Pasman questioned the reliability of his own report, Dr. Pasman conducted a single consultative examination of Plaintiff, meaning that an opinion rendered by him would not be entitled to any special deference.  The ALJ's failure to explicitly reference the finding that Plaintiff's prognosis was guarded is therefore harmless.  Since a statement from acceptable medical sources reflecting judgments about a claimant's prognosis is considered a medical opinion, however, the ALJ should reference such finding, to the extent necessary, upon remand.  *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

### C.    Hypothetical to the VE

Finally, Plaintiff asserts that the ALJ erred in posing incomplete hypotheticals to the VE.  Namely, Plaintiff argues that the ALJ omitted a comprehensive description of her impairments and limitations.  As such, Plaintiff asserts that the VE's testimony does not provide substantial evidence in support of the ALJ's finding that Plaintiff could perform work existing in significant numbers in the economy.

At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work.  *Phillips*, 357 F.3d at 1239; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an

adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239.  Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.*  At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *Winschel*, 631 F.3d at 1180 (citations omitted); *see Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted).  There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; specifically, by applying the Medical Vocational Guidelines ("Grids") and by using a VE. *Phillips*, 357 F.3d at 1239-40.  Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the ALJ must consult a VE. *Id.* at 1242.

If the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to the VE that accounts for all of the claimant's impairments. *Ingram*, 496 F.3d at 1270 (citation omitted).  When the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected

as unsupported"). For a VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227.

As discussed more fully above, the decision does not indicate that the ALJ properly considered Plaintiff's impairments and limitations in setting forth the RFC assessment. Accordingly, if the ALJ relies upon the testimony of a VE on remand, the ALJ should pose hypotheticals incorporating any additional limitations included in the new RFC assessment.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 29th day of March, 2021.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record